### Sutton v. Page.

NOTE 27.—The State *v.* Bock, 9 T., 369.

---

### [142] SUTTON v. PAGE AND WIFE.

It is a rule which ought to be as obligatory here as in England that unless the damages be such as may be presumed *necessarily* to result from the breach of contract, they must be stated specifically and circumstantially, in order to apprise the opposite party of the facts intended to be proved. Thus, in an action against the vendor of an estate, it is held that if the purchaser proceed for interest and expenses, he must declare specially, stating such expenses and the loss arising from not having the use of the deposit money, &c.

*Quere?* As to the measure of damages in an action by the vendee against the vendor of real estate, upon the usual personal covenants in a conveyance.

Where, in an action on a bond for title, the petition discloses that it is not in the power of the defendant to make the title, and does not allege any special damage, the measure of damages is the purchase-money paid with interest. In such a case the bond for title is a claim for money within the meaning of the fifteenth section of the act of March 20, 1848, to regulate proceedings in the County Court pertaining to the estates of deceased persons. (Note 28.)

*It seems* that a claim against an estate, which requires the intervention of a jury to ascertain the damages, is not such a "claim for money" as the law requires to be presented to the administrator for allowance before instituting suit.

Where a bond for title, being a claim for money, was presented to the administratrix and allowed, and also approved by the Chief Justice, and was afterwards lost, together with the evidence of its allowance and approval—there was no allegation that the administratrix denied the existence of the bond nor its approval—*Held*, In a suit to enforce the bond, that the District Court would not entertain the suit, under the prayer for general relief, merely to supply the loss of the bond, &c.

Appeal from Walker. The appellant filed his petition in the District Court on the 6th day of June, 1849, alleging in substance that on the 23d day of January, 1840, John Robbins, since deceased, in consideration of the sum of $1,480, executed and delivered to the plaintiff a bond in the sum of $4,000, conditioned to make title to a certain tract of land held by Robbins by virtue of a location of his headright certificate. The petition further alleges that the bond was duly recorded in Montgomery [143] county, and a certified copy

71

from the records is made a part of the petition; that Robbins died without performing any part of the contract on his part; that his widow administered, and subsequently intermarried with Richard Page, and they are made defendants; that in the year 1847 the plaintiff caused the bond to be presented to the said administratrix; that it was duly accepted by her, and also presented to and approved by the Probate Court of the proper county, and that the acceptance and approval were indorsed upon the bond; that the bond was subsequently lost. The petition further alleges that the decedent in his lifetime, or the administratrix after his death, lifted and removed his location from the land so contracted to be conveyed to the plaintiff, and located the certificate elsewhere; whereby the administratrix was incapacitated to make or procure for the plaintiff a title to the land in compliance with the bond; and that neither the intestate in his lifetime, nor his administratrix since his death, had performed their covenant and agreement contained therein; that the plaintiff is advised that the "said acceptance is indefinite, and that he has no other means of ascertaining his damages, which he avers to be two thousand dollars, but by resort to this court;" concluding with a prayer for judgment for his damages, and for general relief. The condition of the bond recites that "the said Isaac Sutton has this day purchased, for the sum of fourteen hundred and eighty dollars, in good and lawful money, the receipt whereof is hereby acknowledged, from the said John Robbins, twelve hundred and eighty acres of land, to be set apart out of the league of land belonging and appertaining unto the said Robbins as his headright," the location of which is particularly described. There is also accompanying the petition an affidavit of the loss of the bond, and its acceptance by the administrator and approval by the probate judge.

At the Fall Term, 1849, the defendants appeared and excepted to the petition for want of jurisdiction in the District Court, alleging that the subject-matter of the suit is properly [144] cognizable only in the Probate Court. They further answered, expressly admitting that "the said bond has been presented to Penelope Page, administratrix as aforesaid, and allowed by her in the manner and form described by the plaintiff, and that the said allowance has been approved by the Chief Justice of Walker county," concluding with a general denial. The defendants subsequently amended their answer by denying that the administratrix of John Robbins, deceased, had ever refused to allow, or that the chief justice and judge of probate had ever refused to approve, the said bond. The cause was heard upon the defendants' exceptions to the jurisdiction of the court, which were sustained, and the suit dismissed; and from this judgment the plaintiff appealed.

*Yoakum & Taylor*, for appellant, argued that the allowance of such a bond as is sued on in this case amounts to nothing. It is not a judgment for want of certainty. Does the allowance give a right in the obligee to the whole penalty of the bond or to such damages as he has actually sustained by the non-performance? Sutton had a right to demand the value of the land at the time of the removal of the certificate. Who is to fix the amount?

II. The act of 1846 (sec. 13, 14, and 15) required all claims to be presented. The act of 1848 requires "claims for money" only to be presented. The bond in this case was presented and allowed under the act of 1846. Suppose the allowance was equivalent to a judgment by default: who will ascertain the damages? The probate judge? The Legislature has not bestowed any such extraordinary powers upon that officer. It is left to the District Court under the Constitution. (Chevallier *v.* Wilson and Wife, 1 Tex. R., 177.)

III. The bond allowed and approved was lost. The Probate Court had no authority to supply the loss. That being the case, the District Court only could do so.

WHEELER, J. The record presents but one question for our [145] consid-

Sutton v. Page.

eration; that is, does the petition disclose a cause of action within the jurisdiction of the District Court?

It is alleged in the petition that the bond upon which this suit is brought was presented to the administratrix of the deceased obligor, and by her duly accepted, and thereupon duly approved by the probate judge, in the year 1847, agreeably to the thirteenth and fourteenth sections of the act to organize Probate Courts, then in force. (Acts of 1846, p. 313.) The fiftieth section of the act of 1848.(p. 251) directed that no holder of a *claim for money* against the estate of a deceased person shall bring suit against the executor or administrator, unless the claim has been presented and its acceptance refused by the administrator in whole or in part, or unless the Chief Justice (who is judge of probate) shall have refused to approve so much as may have been allowed by the administrator. But in case of the refusal to allow or approve a claim for money duly presented for that purpose, the fifty-first section of the same act provides that the holder of the claim may bring suit and recover judgment in any court having jurisdiction of the amount; but no execution shall issue upon the judgment; which shall have the same force and effect as the acceptance of the claim by the administrator and its approval by the Chief Justice.

This statute contemplates only money demands; and upon these it expressly forbids the bringing of a suit, unless the claim shall have been in whole or in part rejected by the administrator, or its approval refused by the Chief Justice. The determination of the present case must depend upon the inquiry whether the petition discloses only a money demand; for if it be such, having been accepted and approved, it comes within the prohibition of the statute, and it was not competent for the plaintiff to have brought this suit.

The alleged breach of covenant consists in the raising of the location by the defendants or their intestate of the headright certificate of the latter from the land contracted to be conveyed to the plaintiff, and the consequent inability of the [146] defendants to make title agreeably to the condition of the bond. For this breach of contract the plaintiff alleges that he is entitled to recover damages, which he estimates at $2,000. But he does not allege the special facts and circumstances which have occasioned the damages claimed. And it is a rule, which ought to be as obligatory here as in England, that unless the damages be such as may be presumed *necessarily* to result from the breach of contract, it will be necessary to state in what the damage consists specially and circumstantially, in order to apprise the defendant of the facts intended to be proved. Thus, in an action against the vendor of an estate, it is held that if the purchaser proceed for interest and expenses, he must declare specially, stating such expenses and the loss arising from the not having the use of the deposit money, &c.; otherwise the deposit money only can be collected. (4 Esp. R., 223; 1 B. & P., 306; 13 East R., 98.)

What should be the measure of damages in an action by the vendee against the vendor of real estate, upon the usual personal covenants in a conveyance, is a question which has been much discussed, and upon which very able jurists have differed in opinion. (Sedgw. Meas. of Dam., 151, ch. VI, and the numerous cases there cited and reviewed.)

In the States of Massachusetts, Maine, Vermont, and Connecticut, in an action on the covenant of warranty, the measure of damages is the value of the land at the time of eviction, without regard to the consideration in the deed. (3 Mass. R., 523; 3 Fairf. R., 1; 14 Conn. R., 245; 12 Verm. R., 381.) This also was formerly, though it is not now, the rule in South Carolina. (1 Bay R., 19; 2 McCord R., 413.) And in Louisiana the vendee, on eviction. is allowed the increased value of the land at the time of eviction, above the original price; and that value, under certain qualifications, may form part of the damages. Such increase only is allowed as the parties might have had in contemplation at the time of the sale, and not any enormous increase produced by unforeseen or fortuitous [147] causes. (13 La. R., 143.) But in other States the rule of the common law has been adopted; and the measure of damages, on a failure of title, is the value of the land at the execution of the deed, and the evidence

·of that value is the consideration money with interest. (13 Johns. R., 50; 5 Munf. R., 415; 2 Bibb R., 272; 3 Call. R., 326; 3 Caines R., 111; 4 Johns. R., 1.) It is stated by Chancellor Kent (4 Kent Com., 476, 5th ed.) that "the ultimate extent of the vendor's responsibility, under all or any of the usual covenants in his deed, is the purchase-money with interest; and this (he adds) I presume to be the prevalent rule throughout the United States."

It is unnecessary to enter upon a particular examination of the numerous adjudged cases upon this subject, or to determine the question in the present ·case; for whatever may be the general rule, there can be no doubt that this plaintiff has stated a case which entitles him to the purchase-money and interest, ·and no more. He states the consideration paid by him to have been $1,480. ,He states the contract to convey and its breach. But he does not allege that the land had become enhanced in value at the time of the breach, or any other fact or circumstance to entitle him to special damages. Under the allegations of his petition, the plaintiff could not be permitted to prove any special damage; and there could, therefore, no question arise as to his right to recover damages beyond the purchase-money paid by him and interest. The loss of his money and its use is the precise injury which the plaintiff, by his own averments, has sustained; and the reparation of this injury is the utmost extent of the liability of the defendants. The law, therefore, fixing the value of the use of the money at legal interest constitutes this a claim for the principal sum paid and interest, and makes it a mere money demand. The acceptance of this claim by the administratrix, and its approval by the chief justice, give it the force and effect of a judgment rendered in a suit brought upon a rejected claim, under the provisions of the fifty-first section of the act of 1848, before cited. Its [148] payment may be enforced in the ordinary course of administration prescribed by law, in the same manner as a judgment of the District Court. There was, therefore, no occasion to resort to this action; and the case of the plaintiff is precisely of that character which brings it within the prohibition to sue contained in the fiftieth section of the act of 1848. Had the plaintiff alleged facts in his petition requiring the intervention of a jury to ascertain his damages, it would have presented a very different question. But as the case is presented in the record, there appears to have been neither the necessity nor right to sue; and the court did not err in dismissing the case.

Judgment affirmed.

Note 28.—Durst v. Swift, 11 T., 273; Hall v. York, 16 T., 23; Rowe v. Heath, 23 T., 614; Neill v. Watson, 39 T., 375; Turner v. Miller, 42 T., 418.