### TEXAS & P. RY. CO. v. RODGERS et al.
### No. 2573.

Court of Civil Appeals of Texas. El Paso. Oct. 1, 1931.

Rehearing Denied Oct. 22, 1931.

T. D. Gresham and R. S. Shapard, both of Dallas, Russell & Starley, of Pecos, Howard & Jackson, of El Paso, and D. Vance Swann, of Odessa, for appellant.

Beall & Beall, of Sweetwater, Paul Moss, of Odessa, and Dallas C. Biggers, of Dallas, for appellees.

WALTHALL, J.

W. B. Rodgers brought this suit against the Texas & Pacific Railway Company for damages for personal injuries to himself and injury to a motortruck driven by him, which injuries he alleges he sustained through the negligence of appellant in operating its railroad engine at the intersection of the Bankhead Highway crossing with appellant's railroad tracks in the town of Odessa.

The Commercial Credit Company, Inc., filed a plea of intervention claiming an indebtedness against appellee Rodgers in the principal sum of $1,003.62, with interest and attorney's fees, evidenced by a promissory note, and secured by a chattel mortgage on said truck. Intervener prayed that it recover a sufficient amount of any judgment recovered by Rodgers in his suit for the destruction of said truck, to pay its said claim. Among its defenses appellant pleaded contributory negligence on the part of Rodgers.

The trial court refused to give to the jury appellant's requested peremptory instruction to find in its favor on the issue of Rodgers' contributory negligence "as a matter of law." In its first proposition appellant submits that the case was fairly tried, and in its brief and oral argument before this court submits that the evidence shows that appellee in driving the truck upon the railroad track at the time and place, and under the circumstances disclosed by the evidence, was guilty of contributory negligence "as a matter of law," and for that reason it was error to refuse its peremptory instruction.

Appellant waives every question other than the one above stated, and asks that this case be reversed and rendered if the evidence shows negligence as a matter of law, and if not that the case be affirmed.

The accident occurred about 2:30 or 3 o'clock on the morning of the day of the accident. The evidence is extensive, covering some 172 pages of the record, accompanied by several photographs and references thereto. Appellee was severely injured and the truck completely demolished.

The jury found that appellant's employees were negligent and that their negligence was the proximate cause of the injuries in question; that the acts of appellee Rodgers, while negligent, were not the proximate cause of the collision. Upon such findings the court entered judgment for appellee for his personal injuries, and for his damages to the truck in the amounts found by the jury, and for intervener against appellee as in the judgment.

As stated, the only question we are called upon to consider is: Should the trial court have given the requested peremptory charge? That is, the negligence charged not being negligence per se to authorize the court to withdraw the issue of appellee's negligence from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. F. B. Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 88, 36 S. W. 247, 37 S. W. 319, and cases cited in the opinion.

A review of the evidence briefly stated shows the following: The accident occurred at the intersection of the Bankhead Highway crossing of appellant's railroad track in the town of Odessa. At the point of intersection and for several blocks before reaching the point of intersection with the railroad tracks said highway runs north and south through the town of Odessa. At that point the rail-

road tracks run east and west, the highway and the railroad tracks intersecting at right angles. At the time of the accident Rodgers was driving his heavily loaded truck south on said highway and collided with one of appellant's locomotive engines, without cars attached, coming from the west at the point of intersection of the highway and the railroad tracks. In going south through Odessa the highway and Grant avenue, one of the streets, are the same. In going south on the highway, the Odessa Hotel is situated on the west side of the highway. Before reaching the hotel, going south, the view of the west is shut off by buildings.

Without quoting from the evidence, we understand from the evidence that the next crossing, to the west, is some four blocks away; that west of the intersection in question is situated the railroad depot, the section house, and ice plant. Before reaching the depot, the locomotive engine, as stated by the trainmen, was running about thirty-five miles an hour, by others it was running faster. As stated by the trainmen, the required whistles were blown and the bell was rung, and by others the whistle was not heard. These statements are not made to determine any question of negligence of the appellant, but that of Rodgers.

Rodgers testified: When he got down by the hotel he slowed down and was looking for the train, and after he passed the street (apparently south of the hotel) said, "there was only one place you could see a train"; said: "there was a lot of box cars on the track that morning and the way the box cars were you couldn't see any train. I kept looking and went in beside the depot and was satisfied no train was coming, then I looked down east. * * * When I passed the Hotel and got to where I could see west, why I told this negro (on the truck) to look for the cars and I looked west and there was a lot of box cars on the track and I was really more careful that morning than before because there were lots of box cars up there and I looked then until I got in behind the depot to where I couldn't see up the track, then I looked east. What for? I was looking for a train. * * * There was a pretty bad little ditch there, then I had broken a spring there once before and had a big load; when I looked East and was satisfied no train was coming, I looked at the ditch. I don't guess I was running over two or three miles an hour. * * * I said when I passed the hotel, as we went down the street I told the negro to look for cars, and we looked. I looked west for the train. There were a lot of box cars and I kept looking until I got in behind the depot where I couldn't see. * * * At the time, I listened for a train, looked and listened too. I did not hear any train coming. * * * You ask if I wouldn't have heard the whistle if I had been listening: I was looking and listening in both directions for the train. * * * It could have whistled back up the track, and I wouldn't have heard it. * * * I know now there are a lot of trees up there that apparently obscure the view, but at that time I didn't know it. * * * There were some lights there. There was a light just this side the track, street light, and a lot of red lights and one on the other side of the track, and the lights shining on the track as they did, the light coming down the track wouldn't have any effect on throwing the light ahead of you. * * * The headlight had no effect."

A witness standing on the east side of the highway north and about a block from the depot testified that he did not hear the whistle and would have heard it had it blown.

The depot is about 300 feet long, platform and all. The main line track is close to and about 60 feet south of the depot. At the time and place of the collision Rodgers testified that in crossing the tracks he was driving his truck at about two or three miles per hour. The above is a very brief statement of a very extended examination of many witnesses.

We have concluded that the court was not in error in refusing to instruct the jury in appellant's favor.

Having been requested by appellant not to reverse and remand the case, and to consider only the one issue, we have considered only the one question, whether appellee was negligent as a matter of law, and have concluded that the evidence is sufficient to take the case to the jury.

The case is affirmed.